## Robert W. Sunasack, Appellant, v. Maud W. Morey, Appellee.

### Gen. No. 15,070.

1. LANDLORD AND TENANT—*when former not liable for injuries sustained from sewer gas.* The rule of *caveat emptor* applies when a contract of letting is entered into. In order that a tenant may recover for injuries sustained by reason of the presence of sewer gas in demised premises that fact must be known to the lessor and unknown to the lessee, at the time of the letting, and the defect be latent so as not to be discoverable upon examination of the premises by the lessee before entering into the contract.

2. LANDLORD AND TENANT—*representations as to condition of premises when letting.* Representations by the landlord as to conditions of premises in respect of which conditions the lessee has the same opportunity for observation and examination as the lessor, afford no ground for action, unless by some artifice the lessor prevents examination as to the conditions concerning which the representations are made.

3. ACTION, CAUSE OF—*false representations as to hidden defect.* False representations made wittingly of a hidden or concealed defect, undiscoverable by any reasonable inspection or examination by him to whom the representation is made, is the wrong upon which an action may be predicated.

Action on the case. Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed October 21, 1910.

W. P. BLACK and A. B. CHILCOAT, for appellant.

E. P. LANGWORTHY and JOSEPH W. ERRANT, for appellee.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

This is an action on the case by a lessee against his lessor, for damages claimed to have been sustained by reason of the presence of sewer gas in the leased premises.  At the close of the plaintiff's case the trial judge peremptorily instructed the jury to return a verdict for the defendant and upon a verdict accordingly returned a judgment for the defendant was rendered.  The plaintiff prosecutes this appeal to procure a reversal of that judgment.

This case was before this court in Sunasack v. Morey, 98 Ill. App. 505.  A judgment of the trial court which sustained a demurrer to the declaration and disposed of the case was then affirmed.  An appeal to the Supreme Court was prosecuted from that judgment of affirmance and that court reversed the judgment and remanded the case to the trial court with directions that the demurrer be overruled and that the case proceed accordingly.  Sunasack v. Morey, 196 Ill. 569.

The case has since been tried upon a declaration containing four counts.  An amended declaration, filed January 27, 1900, contains two of these counts and two additional counts were filed on March 24, 1900.

There were originally two defendants, Mrs. Lydia J. Morey and Miss Maud W. Morey; but Mrs. Morey died and the suit was discontinued as to her.

All the counts may for present purposes be regarded as alike.  *Inter alia,* plaintiff sets up ownership of and possession in the defendants, on April 17, 1896, of certain property in Chicago whereupon there was a three-story brick building.  This is followed by an averment that it "then and there became and was the duty of the defendants to keep their  said building in good and safe repair and condition, and more particularly the sewer and plumbing connected therewith.  So that the same should be kept free from sewer

gas," in order that tenants rightfully therein might not be subjected to danger or hazard by sewer gas. Then follows an averment of breach of duty that yet the defendants in utter disregard of that duty, on the last mentioned date negligently suffered and permitted the sewer and plumbing connected with the building to be and remain in a bad and unsafe condition for tenants to dwell in on account of sewer gas escaping therein, and by a further averment that all of this was well known to the defendants "or, by the use of ordinary care on their part, should have been known by them" and was unknown to the plaintiff, previous to his leasing the premises. It is then further averred that "on, to wit, the 17th day of April, 1896," after defendants had "assured" plaintiff that the first floor of said three-story brick building was "free from sewer gas and that it was in a good and healthy condition to live in," the plaintiff leased the first floor by a written lease, to be used as a barber shop by him and as a dwelling place for himself and his family, and that, soon after taking possession and moving in, plaintiff discovered that sewer gas was escaping into his premises and that he was in various ways injured and greatly damaged by such sewer gas.

From the evidence it appears that by an indenture of lease, dated March 31, 1896, the plaintiff leased from Maud W. Morey the first floor for the purposes mentioned for a term from May 1, 1896, to April 30, 1897. Among the provisions contained in the lease are the following:

"*Second.* That he [plaintiff] has examined and knows the condition of said premises and has received the same in good order and repair, except as herein otherwise specified, and that no representations as to the condition or repair thereof have been made by the party of the first part [Maud W. Morey] or the agent of said party, prior to or at the execution of this lease, that are not herein expressed or indorsed hereon; and that he will keep said premises in good repair * * * and will keep said premises and appurtenances including catch basin, vaults and adjoining alleys, in a clean and healthy condition, according to the city ordinances, * * * during the term of this lease at his own expense * * *.

"*Third.* That the party of the first part shall not be liable for any damage occasioned by failure to keep said premises in repair and shall not be liable for any damage done or occasioned by or from plumbing, gas, water, steam, or other pipes, or sewerage, or the bursting, leaking or running of any cistern, tank, wash-stand, water-closet or waste-pipe in, above, upon or about said building or premises."

Plaintiff testified that he first examined the store floor about the middle of April, 1896, at which time it was occupied by Irving & Swanwick as a real estate office. He then moved into the premises and for a period of about fifteen days he occupied one half of the store, that is, one side, and conducted a barber shop there, while the real estate firm occupied the other half for their business. At the expiration of about fifteen days, that is about May first, plaintiff took possession of the entire first floor and moved in with his family. About the last of October plaintiff moved out and vacated the premises. Plaintiff's testimony is not at all times consistent. Evidently the lapse of time has dimmed his recollection to a considerable extent and consequently his testimony is not as reliable as would be desirable. Sometimes he testifies that he first saw the premises about the middle of April and at other times that he visited them about the middle of March. He apparently has no clear recollection of the signing of the lease by himself nor of the delivery of the lease to him. He testifies that the lease was delivered to him a few days before the first of May and after a conversation which he says he had relative to the plumbing and sewerage with Swanwick, who prepared the lease.

He testified that about two weeks after his family moved into the premises his wife and a child became sick and that they all became ailing. A physician, who treated the child nearly a month, testified it to be his opinion that sewer gas caused the sickness of the child. Another physician, who treated the child and also other members of plaintiff's family as well and who appears to have been plaintiff's principal physician, testified that he "reached the conclusion that the family was suffering from troubles which were aggravated

by the condition of the atmosphere of the house;" that he "concluded it was some air which vitiated and poisoned the air of the room," and that "It was a musty odor and I assumed that it was something that had to do with defective sewerage or pipes." This physician testified, further, that the child developed pneumonia from which it died on November 26, 1896, and that the members of the family, other than the child, recovered.

When plaintiff first went into the building, according to his testimony, he "did not notice any sewer gas smell, nor any smell" and he noticed no smell, while he occupied the premises jointly with the real estate firm. He first noticed a smell or odor during the month of May, a few days after his family had moved in. Further, he testified that this smell was a strong smell, something like the smell of decaying vegetables; that it was strongest in May, slightly less in June, considerably less in July and that in August and September it was not very noticeable. In June and in July plaintiff went into the basement. He opened a trap-door in the hallway of the building. At one time he testified this trap-door was nailed and at another time he said: "It was not fastened; it was kind of laid there, as far as I remember, and it was raised up." He says that in the basement, which had openings toward the front and toward the rear, he found the sewer on top of the ground and every joint loose for at least thirty feet and the ground alongside wet and that there he discovered a strong smell, like decayed vegetables, coming from the sewer. Another witness, a plumber, who went into the basement some four or five weeks after Sunasack moved out, testified that he found an odor there that "Certainly was sewer gas." This witness also testified that he found some bones about the center of the basement that looked as if they were the bones of a cat or part of a cat, but he could not tell when it had died.

The strong smell or odor, the illness of members of the family, the testimony of the doctors, the looseness in the joints of the sewer pipe and the testimony of the plumber is relied upon as establishing the presence of sewer gas. The

presence of foul odors was proven to exist at some point of time; but there is a question whether there is any evidence tending to show sewer gas escaping into the premises, or even foul odors, at the time of the leasing. If neither foul odors nor sewer gas escaped into the premises at that point of time it is a serious question whether the defendant would be liable. In these respects it is doubtful whether this evidence was sufficient to entitle plaintiff to go to the jury upon the allegations of his declaration. But however that may be this record presents two insurmountable obstacles to a recovery by the plaintiff, even though we assume that a latent or concealed defect existed in the demised premises at the time of the letting in that sewer gas escaped into the first floor. One obstacle is that plaintiff failed totally to show that the defect, i. e. either the escaping of sewer gas into the premises or that the sewer pipe was out of repair was known to the landlord at the time of the leasing and the other obstacle is that plaintiff failed to show any representation or assurance by the lessor or landlord that the defect did not exist. There is no presumption in law that the lessor knew of the escape of sewer gas into the premises at the time of the leasing. Jackson v. Odell, 9 Daly (N. Y.) 371. In an action such as this the burden of proving such knowledge was upon the plaintiff. If the strong smell described be evidence of the presence of sewer gas, which is doubtful, the record does not show that there was such smell in the premises at the time of the delivery of the lease.

In Sunasack v. Morey, 196 Ill. 569, it is aid:

"The law is well settled that the rule of *caveat emptor* applies to a contract of letting    *    *    *    The tenant takes the premises as he finds them, subject to his own risk, and there is no implied covenant on the part of the landlord that they are fit for habitation    *    *    *.    Where, however, there are concealed defects in the demised premises, attended with danger to an occupant, which a careful examination [by the lessee] would not disclose but *which are known to the landlord,* the latter is under obligation, imposed upon him by law, to reveal them to the tenant in order that he may guard against them."

The same rule is stated in Sunasack v. Morey, 98 Ill. App. 505. In the latter case it is said:

"Nor is the landlord or grantor liable for representation as to conditions, concerning which the lessee or grantee has the same opportunity for observation and examination that has the lessor or grantor, unless by some artifice the lessor or grantor prevents the lessee or grantee from making an examination as to latent defects, known to the lessor or grantor."

See also Doyle v. Union Pacific Railway Company, 147 U. S. 413. The false representation, wittingly made of a hidden or concealed defect, undiscoverable by any reasonable inspection or examination on the part of the lessee, is the wrong upon which an action may be predicated.

In England the common law has now been changed by a statutory enactment that, in any contract for letting for *habitation by persons of the working classes* a house or part of a house, there shall be implied a condition that the house is in all respects reasonably fit for human habitation, at the commencement of the holding. Taylor's Land. & Ten. 9th Ed. note 1 par. 175 a. We have no such statutory enactment in this state.

The evidence discloses Miss Morey to be the lessor. There is no evidence that she made any representations, by herself or by any agent authorized thereto, either that the building was "in good and safe repair and condition;" that "the sewer and plumbing" connected with the building was "in good and safe repair and condition or that at any time, the demised premises were free from sewer gas. As already pointed out, it is the law that, as a general rule, a lessee takes the demised premises subject to all defects in physical condition and in title. There are exceptions to this rule as, for instance, where by the contract of demise the lessor makes some warranty or covenant as to the physical condition of the premises or as to the title; he will be holden for any breach of such warranty or covenant, and where there is some concealed, latent or hidden physical condition or defect at the time of the letting of which the lessor is

aware, and by some representation or assurance the lessor induces the lessee ·to believe that such concealed, latent or hidden physical condition or defect does not exist, then the lessor will be holden for the injury he has occasioned by his false representation or assurance in an action on the case. There is no liability for any defect ascertainable by a reasonable inspection and examination of the premises, notwithstanding the representation of the lessor.  A lessee, like any purchaser, can charge himself alone for the consequences of · a negligent or insufficient·inspection or examination.

It appears from the evidence that prior to the execution and delivery of the lease neither Miss nor Mrs. Morey had any conversation with plaintiff.    Neither Miss nor Mrs. Morey made any representations or assurances to plaintiff regarding the demised premises.    Miss Morey was called as a witness on behalf of plaintiff and testified that her mother, Mrs. Morey, had authority to and did represent her "to a greater or less extent in connection with the management of that property.    She was, practically, my agent in the matter."·   That the defendant, Miss Morey, so testified is pointed out by appellant's attorneys, in their argument, but we fail to see the purpose of such reference, for there is absolutely nothing in the record regarding any representations or assurances by Mrs. Morey to plaintiff.    It was testified that in October; 1896, Mrs. Morey, in reply to an assertion by plaintiff that there was sewer gas in the house, said "she knew there was, but she didn't care, she wanted her money."    This was no representation or assurance upon which plaintiff acted in executing his contract of lease.    We fail to see how it was material what Mrs. Morey knew or did not know with reference to there being sewer gas in the premises in October.

Plaintiff testified that he had a conversation with Swanwick about the 15th of April and that in that conversation: "I asked him if the plumbing was all right and the sewerage and he said it was in first class condition, that was before signing the lease."    If we assume this to be a sufficient representation or assurance in substance, plaintiff is not helped

thereby. This record furnishes no express or implied
authority in Swanwick to make any representation or assur-
ance in regard to the premises, which, if false, would charge
the defendant with the falsity thereof. He was not defend-
ant's agent, having charge or control of the premises, nor
for the letting thereof, either exclusively or otherwise.
Plaintiff has pointed out no evidence tending to show that he
was such agent nor have we been able to find any in the
record. There is nothing tending to show his statement to
be within the scope of any employment by the defendant.
Plaintiff called Swanwick, who said he had been a friend of
the plaintff for a long time, as a witness. Swanwick first
testified that he prepared the lease and that he represented
Lydia J. Morey and Maud W. Morey "in connection with
the preparation of that lease." The following questions were
then asked by plaintiff's attorney and the following answers
made by the witness:

"Q. You were the agent for the purpose of collecting the
rent for the owners of the property? A. I was not, for
the collection of the rent.

Q. But you were for the renting of the property? A.
Only for negotiating the lease."

This evidence falls far short of establishing that Swan-
wick had authority from the defendant, Miss Morey, to make
representations with reference to the condition of the premi-
ses, which, if false, would charge her with the falsity thereof.
The evidence even negatives the idea that he was her agent
for the renting of the premises. Plaintiff did not even bring
out the facts and circumstances of Swanwick's employment,
although within reach, but only Swanwick's own conclusions
as to the employment. This left no room for aiding plain-
tiff by intendments and inferences from facts and circum-
stances shown.

The provisions of the lease executed by plaintiff are
expressly inconsistent with the theory of any false repre-
sentations having been made with reference to the condition
and repair of the demised premises; but were that not so,
we fail to see that plaintiff presented a case which entitled

him to the verdict of a jury and we find no reason for disturbing the judgment of the trial court. The judgment must be affirmed.

*Affirmed.*